Filed 3/26/21  Gentry v. Rodriquez CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DAVID GENTRY et al., | C089655 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201380001667) |
| v. | |
| MATTHEW RODRIQUEZ, as Attorney General, etc., et al., | |
| Defendants and Respondents. | |

Plaintiffs are comprised of individual gun purchasers and a nonprofit association committed to promoting recreational firearm shooting and protecting the rights of those involved in shooting sports.  Pursuant to multiple theories, plaintiffs sought to enjoin the California Department of Justice (Department) from using fee revenue paid by firearm purchasers for purposes added to the Penal Code[1] by Senate Bill No. 819 (SB 819).

---

[1]     All section references are to the Penal Code unless otherwise indicated.

1

(SB 819 (2011-2012 Reg. Sess.) § 2.) Plaintiffs further sought a writ of mandate requiring the Department to return fee revenue "unlawfully" appropriated under the authority of SB 819 and for the California State Controller (Controller) to recoup the same.

Plaintiffs did not prevail on several causes of action and appealed. Before briefing was filed in this court, the Legislature adopted Assembly Bill No. 1669 (AB 1669), which amended section 28255 that plaintiffs challenged in the trial court. (AB 1669 (2019-2020 Reg. Sess.) §13.) Plaintiffs urge us to consider their appellate claims as if their causes of action challenged AB 1669, instead of SB 819 as pled and considered by the trial court. We decline to do so. Given this determination, the parties agree all but one of plaintiffs' appellate contentions are moot. We accept plaintiffs' concession, and further reject their remaining claim asserting the Department lacked statutory authority to use fee revenue collected before the passage of SB 819 for SB 819 purposes. Accordingly, we affirm.

## BACKGROUND[2]

"In 1982, the Legislature first authorized the Department . . . to collect a [dealer's record of sale fee (sale fee)], to cover the cost of performing background checks on firearms purchasers. The initial [sale fee] was $2.25. Over the years, the amount of the [sale fee] increased, as did the list of activities it funded. In 1995, the Legislature amended the statute to cap the [sale fee] at $14 (the amount it had been since 1991), subject to increases accounting for inflation. In 2004, the Department adopted regulations adjusting the [sale] fee to $19."

---

[2] The parties do not dispute the trial court's factual recitation in its ruling on plaintiffs' petition for writ of mandate and complaint for declaratory and injunctive relief. Thus, we adopt it in large part.

At the time of trial, "section 28225 . . . authorize[d] the Department to require a firearm dealer to charge a purchaser a fee no more than necessary to fund" various purposes, including subdivision (b)(11) of that section, which funds " '[t]he department for the costs associated with funding Department of Justice firearms-related regulatory and enforcement activities related to the sale, purchase, possession, loan, or transfer of firearms pursuant to any provision listed in [s]ection 16580.' "

"Prior to 2011, [section 28225,] subdivision (b)(11) did not include the word 'possession.' In 2011, the Legislature passed [SB 819], adding 'possession' to the pre-existing list allowing the [sale fee] calculation to include the cost of the Department's 'firearms-related regulatory and enforcement activities related to the sale, purchase, *possession*, loan, or transfer of firearms pursuant to any provision listed in [s]ection 16580.' ([E]mphasis added [by trial court].)

"On May 1, 2013, the Legislature enacted [Senate Bill] 140 [(SB 140)[3]], creating Penal Code section 30015, [entitled] 'Reducing backlog in Armed Prohibited Persons System[4] and addressing illegal possession of firearms; Appropriation; Report.' " Through that system "the Department maintains a database of persons prohibited from possessing firearms, and uses the database to investigate, disarm, apprehend, and prosecute those prohibited persons." "Pursuant to section 30015, the Department [allocated] $24,000,000 from the [sale fee] account to 'address the backlog' in the [armed prohibited persons system], and 'the illegal possession of firearms by those prohibited persons.' "

---

**3**      (SB 140 (2013-2014 Reg. Sess.) § 2.)

**4**      The Legislature established the armed prohibited persons system in 2001.

Based on these facts, plaintiffs filed a petition for writ of mandate and complaint for declaratory and injunctive relief. They alleged, among other things, that SB 819 was an illegal tax under article XIII A, section 3 of the California Constitution.[5] Following the Department's motion for judgment on the pleadings, the trial court dismissed the causes of action premised upon this theory finding SB 819 was not a constitutionally invalid tax under article XIII A, section 3, because SB 819 did not increase the sale fee.

Plaintiffs then filed an amended petition. In their first cause of action, plaintiffs sought a declaration the Department lacked statutory authority to use sale fee revenue collected before the passage of SB 819 for SB 819 purposes and an injunction preventing it from doing so. Plaintiffs' second cause of action sought a writ of mandate precluding the Controller from disbursing sale fee revenues pursuant to SB 140, while their third cause of action sought a writ of mandate for the Controller to recoup "unlawfully appropriated funds" pursuant to SB 140, and their fourth cause of action sought for the Department to return those same funds to the Controller. As their fifth cause of action, plaintiffs sought a writ of mandate requiring the Department to determine the amount necessary to fund the activities enumerated in section 28225, subdivision (b) and charge only the amount so determined as the sale fee. As their sixth through eighth causes of action, plaintiffs sought declarations SB 819 was a constitutionally invalid tax under article XIII, sections 1 through 3. They further sought injunctions as part of those causes of action prohibiting the Department from using sale fee revenue for activities related to the possession of firearms pursuant to SB 819. Finally, plaintiffs' ninth cause of action sought a declaration as to the "Scope of Senate Bill 819's 'Possession' Provision as Applied to Funds Collected under the Guise of the [sale] Fee."

---

[5] Further article references are to the California Constitution unless indicated otherwise.

4

The parties stipulated to the trial court adjudicating plaintiffs' fifth and ninth causes of action. The trial court found for plaintiffs. Specifically, the trial court found the phrase " 'no more than necessary' as used in section 28225 imposes a ministerial duty to perform a reassessment of the [sale] Fee more frequently than every thirteen years [and the Department] failed to perform this duty . . . . [¶] [Further, t]he plain language of [section 28225,] subdivision (b)(11) does not specify to what 'possession' activities it refers. However, SB 819, section 1, subdivision (g) makes clear that 'possession' is limited to [armed prohibited persons system]-based enforcement."

Plaintiffs thereafter submitted their remaining causes of action to the trial court. In their trial brief, plaintiffs argued the sale fee was a tax under *Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, and thus invalid under article XIII, sections 1 through 3. They also argued the Legislature lacked statutory authority to appropriate sale fee revenues collected before SB 819 was adopted for SB 819 purposes.

In its ruling on plaintiffs' submitted causes of action, the trial court found SB 819 did not constitute a constitutionally invalid tax under *Sinclair Paint* and plaintiffs "failed to demonstrate sufficiently that the Department used funds pursuant to SB 140 that were collected prior to SB 819 and that the use of such funds (if any) was improper." Accordingly, it denied plaintiffs relief on their remaining causes of action. As to plaintiffs' causes of action previously adjudicated, the trial court granted plaintiffs' petition as to their fifth cause of action but found it unnecessary to issue a writ of mandate given its ruling on the submitted causes of action. The trial court further granted plaintiffs declaratory relief based on the "prior finding that Possession as used in Penal Code section 28225, subdivision (b)(11) is limited to [armed prohibited persons system]-based enforcement."

Plaintiffs appeal.

5

Before briefing was filed, the Legislature adopted AB 1669, which reduced the fee charged in section 28225 to $1. AB 1669 also removed subdivision (b)(11) from section 28225, which served as the basis for plaintiffs' litigation. AB 1669 authorized the Department to charge "an additional fee in the amount of $31.19 per firearm-related transaction to cover the costs of [the Department's] firearms-related regulatory and enforcement activities as specified." Section 28233, subdivision (b) specifies the $31.19 fee is "available, upon appropriation by the Legislature, for expenditure by the [D]epartment to offset the reasonable costs of firearms-related regulatory and enforcement activities related to the sale, purchase, manufacturing, lawful or unlawful possession, loan, or transfer of firearms pursuant to any provision listed in Section 16580."

## DISCUSSION

### I

*Clarified Appellate Contentions*

Plaintiffs raise two constitutional appellate contentions. In their first argument, plaintiffs contend that while they "believe the trial court's reasoning for dismissing their [article XIII A, section 3] claims is erroneous, that question has now become moot with the adoption of AB 1669 because it is no longer the case that the [sale] Fee is still $19." (Fn. omitted.) Plaintiffs then enter a lengthy legal analysis regarding the constitutionality of SB 819 and AB 1669 under article XIII A, section 3. In a footnote and without citation to legal authority demonstrating the trial court erred, plaintiffs state the trial court erroneously reasoned article XIII A, section 3, did not apply to SB 819 because SB 819 did not increase the sale fee. We "disregard points raised in a footnote rather than being properly presented under a discrete heading with appropriate analysis." (*People v. Carroll* (2014) 222 Cal.App.4th 1406, 1412, fn. 5.) Thus, plaintiffs' challenge to the trial court's determination that article XIII A, section 3, was inapplicable to SB 819 is

6

forfeited and plaintiffs' first appellate contention is limited to the argument that AB 1669 is an unconstitutional tax under article XIII A, section 3.

In plaintiffs' second constitutional appellate contention, they argue the sale fee is a tax under *Sinclair Paint*. "While [plaintiffs] believe that the trial court was wrong, its analysis is moot with the passage of AB 1669, as the Department is no longer is [*sic*] spending money on [the armed prohibited persons system], but instead various other activities to which most [sale] Fee payors have a tenuous, if any, connection." Plaintiffs challenge the trial court's finding the Department demonstrated a reasonable nexus between sale fee payors and the burden they pose on the armed prohibited persons system. Plaintiffs conclude that, because the Department failed to show a reasonable nexus between sale fee payors and the armed prohibited persons system, it would also fail to show a sufficient nexus between sale fee payors and the purposes permitted by AB 1669.

Plaintiffs' arguments amount to a request we address their constitutional contentions in light of the changes AB 1669 made to the Penal Code. Plaintiffs fail to cite authority or make a legal argument in their opening brief for why we should do this. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [parties must "[s]upport each point by argument and, if possible, by citation of authority" otherwise the contention is forfeited]; *McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.) While plaintiffs mount a legal argument and cite relevant authority in their reply brief for why we should consider their appellate contentions in light of AB 1669, we do not address arguments raised for the first time on reply. (*American Indian Model Schools v. Oakland Unified School Dist*. (2014) 227 Cal.App.4th 258, 275-276.) Accordingly, plaintiffs' argument we should consider the constitutionality of AB 1669 is forfeited.

In any event, it is not appropriate for us to address the constitutionality of AB 1669 in this appeal. Relying on *Alternatives for California Women*, *Inc. v. County of Contra Costa* (1983) 145 Cal.App.3d 436, plaintiffs disagree. In *Alternatives for*

7

*California Women*, the court considered whether a challenge to a county ordinance was mooted by amendment to the county ordinance. (*Id.* at pp. 439-440.) "[T]he ordinance [originally] prohibited door-to-door 'soliciting' in the unincorporated area of the County between 7 p.m. and 8 a.m." (*Id.* at p. 439.) "[T]he board of supervisors amended the ordinance to prohibit 'soliciting' between 'sunset and sunrise' instead of between 7 p.m. and 8 a.m." (*Ibid*.) In concluding appellant's challenge to the ordinance was not moot, the court said an "appeal may not be moot if the amendment includes, continues, or reenacts a material part of the enactment which was considered by the lower court. [Citations.] [¶] It appears that the postjudgment amendment of the ordinance has produced the latter situation here. The 'material part' of the enactment is the prohibition of 'peddling and soliciting' in evening and nighttime hours. The prohibition has been retained in the ordinance as amended, and the only change is in the designation of the times at which the prohibition is in effect. [Citation.] There has been no showing that the limited change significantly affects the 'material part' of the ordinance for purposes of testing its constitutionality." (*Id*. at p. 445.)

Plaintiffs argue the material part of SB 819 survived the adoption of AB 1669 because AB 1669 continues to allow the Department to regulate the mere possession of firearms with sale fee revenue. But as declared by the trial court, the term "[p]ossession as used in Penal Code section 28225, subdivision (b)(11) [as amended by SB 819] is limited to [armed prohibited persons system]-based enforcement." Indeed, the trial court's constitutional analysis revolved around whether the armed prohibited persons system particularly benefited sale fee payors, thus equating the armed prohibited persons system with the term possession then found in section 28225, subdivision (b)(11). That is not the case for AB 1669, which the parties agree did not fund the armed prohibited persons system. Thus, because "possession" means something different in the AB 1669 context than it did in the SB 819 context, the material part of plaintiffs' constitutional

8

challenge did not survive the adoption of AB 1669. Accordingly, we will not address plaintiffs' appellate contentions in light of AB 1669.

Given this determination, plaintiffs concede "all but one of [their] challenges are moot." (Capitalization omitted.) The exception being the appellate contention related to their first cause of action because that claim "does not depend on whether the [sale fee] is a tax." We accept plaintiffs' concession. Thus, we dismiss plaintiffs' constitutional appellate contentions as moot and will only address plaintiffs' appellate contention pertaining to whether the Department had statutory authority to use sale fee revenue collected before the adoption of SB 819 for SB 819 purposes.

II

*Plaintiffs' Remaining Appellate Contention Lacks Merit*

Plaintiffs contend the Legislature had no authority to appropriate sale fee revenues collected before SB 819 for SB 819 purposes. "The premise of [this contention] is axiomatic: There is no authority to retroactively convert funds collected under a fee authorized for a particular [purpose] to use for a whole other purpose later justified. That would make it a tax no different than had the levy been expressly intended as a tax ab initio." As support, plaintiffs point only to the Department of Finance's entry regarding the sale fee in the manual of state funds. Under the heading "State Appropriations Limit" (emphasis omitted), the manual provides: "Revenues in this fund are not proceeds of taxes, however, when transferred, may become proceeds of taxes. These revenues are used to regulate the activities engaged in by the payers."

This citation does not prove plaintiffs' contention that simply by appropriating fee revenue for a purpose not enumerated at the time those fees were collected the fee revenue has been converted into tax revenue. Indeed, the manual provides such a transfer *may* result in fee revenue becoming tax revenue, not that a transfer of funds always results in the conversion of fee revenue to tax revenue. Consequently, plaintiffs have not demonstrated the trial court erred when it found they failed to prove the use of sale fee

9

revenues collected before SB 819 for SB 819 purposes was improper.  Thus, we reject plaintiffs' surviving claim of error.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs.  (Cal. Rules of Court, rule 8.278(a)(5).)


                /s/_____
                Robie, J.


We concur:


/s/_____
Raye, P. J.


/s/_____
Murray, J.